M. SIMON and L. Agnes, on behalf of themselves and all others similarly situated

v.

**WESTINGHOUSE ELECTRIC CORPORATION et al.**

Civ. A. No. 76–874.

United States District Court, E. D. Pennsylvania.

Jan. 26, 1977.

---

13. *Quoting Black v. Sheraton Corp. of America*, 47 F.R.D. 263, 271 (D.D.C.1969).

Richard D. Greenfield, Bala Cynwyd, Pa., for plaintiffs.

Raymond Midgett, Jr., Philadelphia, Pa., for Westinghouse.

John G. Harkins, Jr., Philadelphia, Pa., for Price Waterhouse.

Patrick T. Ryan, Philadelphia, Pa., for Kuhn Loeb Co. & First Boston Corp.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This complex securities action was filed by the plaintiffs on March 23, 1976 as a class action on behalf of purchasers of Westinghouse Electric Corporation securities in the period December 7, 1971 to December 1, 1975. In an amended complaint filed April 23, 1976, the plaintiffs allege that the defendants engaged in a course of conduct involving material misrepresentations and non-disclosures throughout the class period which artificially inflated the price of Westinghouse securities. Plaintiffs now have moved for certification of the following class under Rule 23 of the Federal Rules of Civil Procedure:

> All those persons other than the defendants herein who purchased or acquired Westinghouse securities during the period of approximately December 7, 1971 to approximately December 1, 1975, and sustained damages thereby, whether by selling such securities at reduced prices or continuing to hold them at reduced market prices.

The defendants have argued that the proposed class fails to meet every requirement of Rule 23, except numerosity, although most of their objections focus on two areas —first, that common questions do not exist, and certainly do not predominate over individual issues, and second, that the named

plaintiffs herein are not adequate representatives of the proposed class. Each side has cited numerous cases in support of its position, and in this area of the law, cases can be found to support practically any point of view. Unquestionably, the plaintiffs' proposed class is very large, and I approach with some trepidation the prospect of having this case proceed as a class action. Nevertheless, I will follow those courts, most notably the Ninth Circuit, that have taken a liberal view of class certifications in securities cases. Consequently, I will certify the plaintiffs' proposed class, as modified in this opinion.

For an action to be certified as a class action, all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) must be satisfied. Rule 23(a) provides that a class may be certified

"only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The first requirement—numerosity—is almost too easily met in this case, since the defendant has estimated that more than 140,000 persons became owners of record of Westinghouse common stock during the proposed class period, and an additional 550,000 became beneficial owners.

The second requirement of Rule 23(a) is that there be questions of law or fact common to the class. In this case plaintiffs allege a number of different misrepresentations and nondisclosures. Plaintiffs claim that Westinghouse failed to disclose losses and other information about its Major Appliance Division, that Westinghouse did not disclose a decrease in orders for turbine generators, that Westinghouse did not disclose losses in other portions of its business, that Westinghouse misrepresented or did not disclose facts relating to its contracts to supply uranium, that Westinghouse did not disclose losses on turn-key

nuclear power plants, and that Westinghouse misrepresented or did not disclose facts relating to improper foreign payments. Plaintiffs contend that these and other misrepresentations or nondisclosures were the product of an unlawful combination and conspiracy intended to cause the members of the class to purchase Westinghouse securities at inflated prices. The defendants have argued that since the various misrepresentations are not interrelated, there is no common thread which connects the misrepresentations and nondisclosures to support a class action certification. Some courts have indicated that an action based on a number of different documents released at different times can only be maintained as a class action if the action is based on the same or similar misrepresentations or nondisclosures throughout the class period. See, e. g., *Fruchthandler v. Blakely*, D.C., 73 F.R.D. 318 (S.D.N.Y.1976); *Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y. 1974). Other courts have held that where a common scheme of deception has been alleged, a common question exists even if the plaintiff's suit is based on otherwise unrelated nondisclosures or misrepresentations. See *In Re U. S. Financial Securities Litigation*, 64 F.R.D. 443 (S.D.Cal.1974); *Siegel v. Realty Equities Corp. of New York*, 54 F.R.D. 420 (S.D.N.Y.1972). I find the latter cases more persuasive. Plaintiffs in this case claim that all of the alleged nondisclosures and misrepresentations were part of a common scheme to artificially inflate the price of Westinghouse securities. Many of the nondisclosures persisted through a substantial portion of the proposed class period, and most of them overlap with other alleged nondisclosures and misrepresentations. Thus, any attempt to establish the true value of Westinghouse securities and the amount these values were unlawfully inflated necessarily will require proof of most of the disclosures, nondisclosures and misrepresentations that helped establish the market price. These issues therefore are common questions of fact for each purchaser within the class period. See *Blackie v. Barrack*, 524 F.2d 891, 903 n. 19 (9th Cir. 1975). Of course, the existence and scope

of the alleged conspiracy among the defendants in itself is a question common to the entire class. Since a single common question is sufficient to satisfy Rule 23(a)(2), I find that that subsection is met in this case.

■ Under Rule 23(a)(3), the claims of the representative plaintiffs must be typical of the claims of the class. In many respects this requirement is encompassed in the requirement that the named plaintiff be an adequate representative, since a plaintiff whose claims are not typical may have no motivation to press the claims of other class members. The defendants contest the typicality of the named plaintiffs' claims on the basis of numerous alleged conflicts within the class. In essence, the defendants contend that no purchaser's claim can be typical of the claim of someone who purchased at a different time, since the alleged misrepresentations and nondisclosures varied throughout the class period. The defendants also argue, without citing any case law, that a class cannot be certified because of conflicts between class members who sold their stock within the class period, and those who continued to hold their stock throughout the class period, and between those who sold within the class period, and those who purchased such stock and therefore also are members of the class. I must reject these arguments, since their acceptance virtually would preclude use of class actions in 10b–5 cases. Although each purchaser is not identically situated, all share a common interest in showing that the price of Westinghouse stock was unlawfully inflated. At least to this extent, the named plaintiffs' claims are typical of the claims of other class members. Moreover, conflicts between buyers and sellers, or between sellers and those who continued to hold relate only to damages, and thus are peripheral to the central issues in this case. Such conflicts potentially are presented in every securities fraud case involving a prolonged class period, but have been rejected consist-

ently by the courts as grounds for denying class certification. See *Blackie v. Barrack*, 524 F.2d 891, 908–12 (9th Cir. 1975); *Herbst v. ITT*, 495 F.2d 1308, 1314 (2d Cir. 1974).

■ Two other conflicts pointed out by the defendants are more substantial. First, the defendants contend that the named plaintiffs, as purchasers of Westinghouse common stock, cannot represent purchasers of other types of Westinghouse securities. While it does not seem likely that the interests of those who purchased different types of securities actually will be adverse to the plaintiffs' interests, it does appear that their interests may be different. For example, the market price of debentures and preferred stock may be affected by factors unrelated to the issuing company, such as the general level of interest rates. See *Kusner v. First Pennsylvania Corp.*, 531 F.2d 1234, 1237 (3d Cir. 1976).

Because of these differences, the claims of common stock purchasers are not necessarily typical of the claims of purchasers of other securities. To the extent the claims differ, purchasers of common stock will have little or no interest in presenting evidence to support the claims of purchasers of other securities. Especially in a case as large and complicated as this one promises to be, it is important that all parts of the class be represented fully and adequately, so that all parts of the class can be bound by any judgment. Cf. *Lewis v. Philip Morris, Inc.*, 419 F.Supp. 345 (E.D.Va.1976). Unlike the *Equity Funding* class action relied on by plaintiffs,[1] there are no named plaintiffs who purchased debentures or preferred stock and so are able to represent such purchasers and insure that their possibly different interests are considered. Consequently, purchasers of Westinghouse securities other than common stock must be excluded from the class at this time. See *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570, 582 (S.D.N.Y.1972); *Herbst v. Able*, 278 F.Supp. 664, 668 (S.D.N.Y.1967). But see *Handwerger v. Ginsberg*, CCH Sec.

1. See *In Re Equity Funding Corporation of America Securities Litigation*, 416 F.Supp. 161, at 176 (C.A.Cal., 1976).

L.Rep. ¶ 94,934, at 97,241 (S.D.N.Y.1975); *In Re Caesar's Place Securities Litigation,* 360 F.Supp. 366 (S.D.N.Y.1973).[2]

 The second serious conflict suggested by the defendants centers on the length of the class period and the dates on which the named plaintiffs purchased stock. The proposed class period is December 7, 1971 to December 1, 1975. Within that period plaintiffs Simon and Agnes purchased stock on December 7, 1971, May 3, 1973, and October 30, 1974. Some courts have indicated that a claimant can be a class representative in a securities case if he purchased securities at any time in the proposed class period. See *In re U. S. Financial Securities,* 69 F.R.D. 24, 38 (S.D.Cal. 1975); *Aboudi v. Daroff,* 65 F.R.D. 388 (S.D.N.Y.1974). Such a rule perhaps would be appropriate where the complaint alleges a single misrepresentation or repetitions of the same misrepresentation. In such a case, the facts necessary to prove the named plaintiff's claim generally would be sufficient to prove the claims of other class members. In this case, however, in addition to allegations of conspiracy, the plaintiffs allege a whole series of nondisclosures and misrepresentations arising at various times and concerning various aspects of Westinghouse's business. In order to recover damages based on these predominantly nondisclosure claims, a plaintiff must show that a duty to disclose arose before the date of his purchase. In this case, the plaintiffs have an interest in showing that a duty to disclose arose before October 30, 1974,[3] but they have little interest in establishing any duty subsequent to that date, nor do they have an interest in showing the amount of

any damages that may have been sustained by purchasers after that date. While the allegations of conspiracy may provide some motivation for showing nondisclosures after October 30, 1974, this interest is not sufficient to insure adequate representation of purchasers after that date. Consequently, they will be excluded from the class. See *Fruchthandler v. Blakely,* 73 F.R.D. 318 (S.D.N.Y.1976); *Elkind v. Liggett & Myers, Inc.,* 66 F.R.D. 36, 41–42 (S.D.N.Y.1975); *Stull v. Baker,* 1973 C.C.H.Fed.Sec.L.Rep. ¶ 94,227 (S.D.N.Y.1973).

For the reasons set forth above, I find that the named plaintiffs have claims that are typical of the claims of the following class: all purchasers of Westinghouse common stock between December 7, 1971 and October 30, 1974.

 The fourth requirement of Rule 23(a), is that the named plaintiffs will adequately represent the interests of the class. In addition to contentions based on conflicts within the class, the defendants also argue that personal qualities of the plaintiffs and their attorney disqualify the plaintiffs as class representatives. I disagree. First of all, the plaintiffs have stated unequivocally that they will be responsible for all the expenses involved in prosecuting this action, and I accept these statements at this time. I also am satisfied that the plaintiffs will vigorously prosecute this action, and beyond that, the personal qualities of the representative plaintiffs are not particularly relevant. Although the plaintiffs have demonstrated in deposition that they do not possess a thorough knowledge of all aspects of their claims, a detailed knowledge on the

---

**2.** I also note that an affidavit filed on behalf of Westinghouse Electric Corporation indicates that the amount of trading in Westinghouse preferred stock and Westinghouse debentures during the class period was quite substantial. It certainly is possible that the claims of these other purchasers also will be litigated through means of a class action, if a claim is filed by an appropriate class representative.

**3.** Defendants have argued that plaintiff Agnes may not use his October, 1974, purchase as a basis for representing a class, because his December, 1971 purchase of 400 shares at

$42.50/share overrides his interest in the 400 shares purchased in October, 1974 at less than $13/share. Even if the earlier, more expensive purchase is more important, the purchase of 400 shares in October of 1974 gives Mr. Agnes a significant interest in proving material misrepresentations and nondisclosures at that later time, and this interest is not in conflict with his similar interest in proving misrepresentations and nondisclosures in December, 1971. On the basis of his two purchases, Mr. Agnes' claims are typical of the claims of all purchasers in the period December, 1971 to October, 1974.

part of non-lawyers of what acts might create liability under section 10b–5 cannot be expected and is not required of a class representative. See *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); *Dorfman v. First Boston Corporation*, 62 F.R.D. 466, 473 (E.D.Pa. 1974). Finally, defendant Westinghouse has attacked the quality of representation that will be provided by plaintiffs' counsel, Richard D. Greenfield. While Mr. Greenfield does not have the years of experience possessed by defendants' counsel, to this point in the case he has been a vigorous advocate and has demonstrated familiarity with securities litigation. Defendants' arguments on this point are without merit. I find that plaintiffs and their counsel will fairly and adequately protect the interests of the class, as narrowed by this opinion.

 In addition to satisfying the requirements of Rule 23(a), a class also must satisfy one of the three subsections of Rule 23(b). In this case, the plaintiffs' class meets the requirements of Rule 23(b)(3)[4] which requires that:

> "(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The defendants have argued strenuously that common questions do not predominate over individual issues. The core of the defendants' argument is their assertion that the only common question is the existence of a conspiracy among the defendants. As I have pointed out previously, I perceive many other factual and legal issues that will be common to most or all members of the class. The existence and scope of any conspiracy among the defendants is one such common question. The legal standards to be applied under Rule 10b–5 is also a common issue for all class members. All class members will have to prove the factual background which established the price of Westinghouse stock, and the amount, if any, that price was unlawfully inflated. This will involve determinations of what facts were not disclosed or were misrepresented, when a duty to disclose arose, what misrepresentations or nondisclosures were material, which defendants were responsible, and whether the defendants intended to deceive, manipulate or defraud. While at any particular time in the class period, certain facts may be more important than others, all of the facts bearing on the price of Westinghouse stock or the existence of any unlawful inflation of that price will be relevant to each class member. Even if some of the determinations just mentioned are not common to the entire class, they certainly are not individual issues, since any material nondisclosure or misrepresentation undoubtedly will have some effect for a significant portion of the class period.

There are, of course, some individual issues that must be weighed against these substantial common questions. Although the process of computing the amount of individual damages possibly can be reduced to a mechanical task, damages still is an individual issue. However, this individual issue is present in every securities fraud case, and should not be a bar to a class action. See *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Although the necessity of proving individual reliance is mentioned frequently as an individual issue, numerous recent cases have held that individual reliance need not be shown in a 10b–5 case, since the reliance factor is established objectively by a showing of materiality. See, e. g., *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Blackie v. Barrack*, 524 F.2d 891, 905–08 (9th Cir. 1975); *Kohn v. American Metal Climax*, 458 F.2d 255, 269 (3d Cir. 1972). The speculative possibility that the defendants may have a right to show nonreliance for each class

---

**4.** The plaintiffs also contended in their opening brief that their proposed class could be certified under subsection (b)(1). Plaintiffs may have abandoned this contention. At any rate, I agree with Judge Van Artsdalen that subsection (b)(1) is not appropriate for an action seeking money damages. *See Bogosian v. Gulf Oil Corp.*, 62 F.R.D. 124, 132 (E.D.Pa.1973).

member and that they may wish to exercise this right is not enough to defeat a class action. See *Blackie v. Barrack,* 524 F.2d 891, 906–07 n. 22 (9th Cir. 1975).[5] Similarly, the possibility that additional individual issues might arise involving the statute of limitations does not outweigh the substantial common questions concerning the existence of a conspiracy, the appropriate legal standards, and the complex factual background during the class period. I find that these substantial common questions predominate over individual issues, and this finding is supported by numerous decisions certifying similar classes in securities fraud cases. See, e. g., *Blackie v. Barrack, supra; Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2931, 23 L.Ed.2d 766 (1969); *In Re Equity Funding Corporation of America Securities Litigation,* 416 F.Supp. 161 (D.C.Cal.1976); *Weiss v. Drew National Corporation,* 71 F.R.D. 429 (S.D.N.Y.1976); *Seiden v. Nicholson,* 69 F.R.D. 681 (N.D.Ill.1976).

■ The final requirement of Rule 23(b)(3) is that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. In opposing class certification in this case, the defendants have not pointed to any alternative method of resolving the plaintiffs' claims. Presumably the defendants hope that a class will not be certified, and the purported class members will be left without a practical remedy. Certainly, it cannot be expected that individual class members will have the inclination or the money to bring individual actions to recover losses which probably are insignificant when compared to the complexity of the litigation that would be required.

The Court of Appeals in this Circuit has indicated that in a doubtful case, the interests of justice demand that the court resolve its doubts in favor of allowing the class action. *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir. 1970), *quoting Esplin v.*

*Hirschi,* 402 F.2d 94, 101 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). This action undoubtedly will present manageability problems. These problems however have not yet crystallized, and perhaps can be mitigated through the use of subclasses or changes in the definition of the class. Speculation on the unmanageability of the class therefore is premature, and in any event is not a sufficient basis for denying the plaintiffs' motion for class certification, especially in the absence of a reasonable alternative method for adjudicating the claims of class members. Many cases, including most of those cited in this Memorandum, have held that class actions are an appropriate means of enforcing section 10(b) of the Securities Exchange Act. I find that a class action is appropriate in this case, and is superior to any other method for adjudicating the claims of the class members.

■ Three additional matters deserve a brief comment. The plaintiffs' proposed class definition limited the class to purchasers who had "sustained damages." The defendants point out that this definition makes it practically impossible to determine who is a class member until issues of damages are determined. Although such a limitation was approved without comment in *Seiden v. Nicholson, supra,* the plaintiffs herein have failed to show the purpose of limiting the class to persons who were damaged. Consequently, the class will not be so limited.

■ Second, plaintiffs defined their proposed class in terms of persons who had "purchased or acquired" Westinghouse securities. In accordance with court decisions limiting the right of recovery in private securities actions to buyers or sellers of securities, I will limit the class to purchasers. See *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44

5. The possibility that the named plaintiffs themselves did not rely directly on various documents released by the defendants does not prevent them from representing a class, since reliance is established by showing the material-

ity of misrepresentations or nondisclosures in documents disseminated to the public. *See Kohn v. American Metal Climax, Inc.,* 458 F.2d 255, 269 (3d Cir. 1972).

L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

Finally, the plaintiffs have sued a number of defendants in this action. Westinghouse Electric Corporation, the individual defendants, and Price Waterhouse and Company apparently were involved in alleged misrepresentations and nondisclosures throughout the class period. On the other hand, defendants Kuhn, Loeb & Co. and The First Boston Corporation apparently were directly involved only as underwriters of a public offering of Westinghouse common stock in December, 1971. Since plaintiffs have alleged that these defendants were part of a conspiracy and may have been involved in some of the plaintiffs' other claims, I will certify the plaintiff class against all of the defendants. However, it is quite likely that at some time in the future a subclass defined in terms of the 1971 public offering might be created for the claims against Kuhn, Loeb & Co. and the First Boston Corporation. I do not have sufficient information to certify such a subclass at this time.

### ORDER

AND NOW, to wit, this 26th day of January, 1977, upon consideration of the plaintiffs' Motion for Class Action Determination and the briefs submitted by the parties, the plaintiffs' Motion is hereby GRANTED, and the following plaintiff class is certified:

All persons other than the defendants herein who purchased Westinghouse common stock during the period December 7, 1971 to October 30, 1974.

AND IT IS SO ORDERED.