Charles FICKINGER on behalf of himself and all others similarly situated

v.

C.I. PLANNING CORPORATION and City Investing Company.

Civ. A. No. 81–0951.

United States District Court,
E.D. Pennsylvania.

July 3, 1984.

**530**

Eugene A. Spector, Jon C. Sirlin Assoc., Philadelphia, Pa., Thomas E. Eichman, Associates, P.C., Haverford, Pa., James M. Richardson, Wynnewood, Pa., for plaintiffs.

Patricia L. Freeland, Philadelphia, Pa., Christopher Crowley, Andrew C. Jacobs, New York City, for defendants.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

Plaintiff brought this action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a) (the "Act"), and Pennsylvania common law, to recover damages for alleged misrepresentations and omissions made by defendants with respect to the financial condition of C.I. Realty Investors, a real estate investment trust (the "Trust"). Plaintiff, after preliminary discovery, now seeks certification of a class of Trust shareholders.

Plaintiff purchased shares in the Trust in April, 1972, and sold them in April, 1978. Defendant, C.I. Planning Corp., a subsidiary of defendant City Investing Company, was the advisor to the Trust during that time and until August 30, 1979. Plaintiff has alleged that between November 29, 1977 and July 10, 1979, defendants, insiders and controlling persons of the Trust, knowing that the Trust's assets were substantially undervalued from certain real estate appraisals and rental income estimates, purchased Trust shares in the open market but failed to disclose to the investing public the existence and nature of these real estate appraisals and income estimates, so that they depressed the market price of the stock to their profit and to the loss of shareholders who sold their Trust shares during that time period in reliance on the integrity of the market. Plaintiff alleges defendants' actions constituted "fraud on the market."

Defendants previously moved for summary judgment on two grounds: (1) that the action was time-barred, and (2) that plaintiff failed to state a cause of action because disclosure was adequate as a matter of law. In denying without prejudice defendants' claim that the action was time-barred, the court held that a two-year limitations period applied and that it was not as yet clear that plaintiff knew or should have known the allegedly actionable facts on or before March 11, 1979 (two years prior to suit). 556 F.Supp. 434. The court also denied defendants' claim that plaintiff failed to state a cause of action as to adequacy of disclosure because of factual issues. Plaintiff now moves, pursuant to Fed.R.Civ.P. 23(a) and (b)(3), for certification of a class consisting of all Trust shareholders, other than defendants and their affiliates, who held shares prior to November 29, 1977 but sold them during the period November 29, 1977 through July 10, 1979.[1]

## DISCUSSION

Rule 23(a) of the Federal Rules of Civil Procedure provides that a class may be certified if:

(1) The class is so numerous that joinder of all members is impracticable,

(2) There are questions of law or fact common to the class,

---

**1.** In his initial submission on class certification, plaintiff sought a class of sellers from November 29, 1977, the date of publication of the Trust's Fiscal 1978 Second Quarter report, through August 30, 1979, the date of change in the adviser for the Trust. Plaintiff has since amended and shortened the period of time requested from November 29, 1977 through July 10, 1979, the date on which defendants sold their Trust shares.

(3) The claims or defenses of the representative parties are typical to the claims or defenses of the class, and

(4) The representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) adds the further requirements that

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The plaintiff has the burden of establishing the propriety of class certification. *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 457 (E.D.Pa.1968).

There is no dispute with respect to satisfaction of the numerosity requirement, nor is there any basis for arguing that a class action is not the superior method for adjudicating the claims raised herein.[2] Defendants contend, however, that the class should not be certified for the following reasons: first, plaintiff's individual claims are subject to unique defenses on reliance and timeliness which render those claims atypical of the claims of the class; second, plaintiff cannot fairly and adequately represent the class because of serious credibility problems; and third, plaintiff would inadequately represent class members who sold in the 17-month period after he sold his shares because he has no claim arising from events occurring after his sale so that his interests are in conflict with those later sellers, and common issues do not predominate. Defendants also contend that a class period, if any, should begin on March 15, 1978, the date of the initial asset appraisal.

*Defendants' Claims of Lack of Reliance and Untimeliness*

■ Defendants argue that plaintiff is subject to a unique defense because he has admitted that he did not rely on either the Trust reports containing the omissions at issue or the market's integrity in deciding to sell his shares, but rather sold simply to get out of the market. Such an admission allegedly renders plaintiff's claims atypical of the claims of class members who may have relied on those reports. Defendants' claim of lack of reliance, whether true or not, is insufficient to deny class certification here. Determining the lack of reliance claim requires the court to delve into the merits of the action. Appraisal of a class action, however, does not depend on a showing of a probability of success on the merits, nor is the court authorized to make such an inquiry at this stage of the proceedings. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). *See also, Miller v. Mackey International, Inc.*, 452 F.2d 424, 427 (5th Cir. 1971) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *Cohen v. Uniroyal*, 77 F.R.D. 685, 695 (E.D.Pa.1977) ("[I]f non-reliance is an affirmative defense to a nondisclosure suit under § 10(b), any consideration of that issue by the court on a motion for class certification would be an improper intrusion into the merits of the case."); *Republic National Bank of Dallas v. Denton & Anderson Co.*, 68 F.R.D. 208 (N.D. Tex.1975) (fact that seven named plaintiffs may be vulnerable to certain affirmative defenses insufficient reason to deny class certification; denial on such basis would require court to delve too deeply into merits of case and result would be premature adjudication before trial or summary judgment motion).

■ The typicality issue in particular depends not on the ultimate right to recover, but on the nature of plaintiff's claim. Re-

---

**2.** Defendants do argue that common issues do not predominate as to any class members who sold their Trust shares after plaintiff sold his. With that exception, however, defendants also concede that questions of law or fact common to the class exist and predominate over questions affecting only individual class members.

gardless of whether plaintiff is in fact able to prove that he relied on defendants' alleged omissions, his claim is still typical of the purported class on the question of liability. *See, Mersay v. First Republic Corp. of America,* 43 F.R.D. 465 (S.D.N.Y. 1968). *See also, State Teachers Retirement Bd. v. Fluor Corp.,* 73 F.R.D. 569 (S.D.N.Y.1976) (the existence of special defenses applicable only to the named defendant does not detract from typicality requirement); *Fogel v. Wolfgang,* 47 F.R.D. 213, 216–17 (S.D.N.Y.1969) (differences in reliance factor does not make plaintiff's claims atypical; "[i]t would be anomalous to require under Rule 23(a)(3) that plaintiffs show that their claims are identical on every issue to those of other members of the class, since Rule 23(b)(3) specifically allows class action treatment where the court finds that common issues 'predominate' "). Defendants' claim that plaintiff is subject to a unique reliance defense therefore does not preclude certification.[3]

■ Defendants also argue that plaintiff's claims are atypical of the purported class because plaintiff is subject to a unique statute of limitations defense. However, as previously stated, approval of a class action does not depend on a showing of probability of success on the merits, nor may the court inquire into the merits of the case on a class action motion. *See, Eisen, supra.* Consideration of the affirm-

ative defense of statute of limitations would be an impermissible intrusion into the merits of the case. *See, Lamb v. United Security Life Co.,* 59 F.R.D. 25, 35 (S.D.Iowa 1972). *Cf., Richardson v. Hamilton International Corporation,* 62 F.R.D. 413, 419–20 (E.D.Pa.1974) (consideration of the affirmative defense of laches in class action determination should be avoided as intrusion into merits of case).

The court has already determined in disposing of defendants' summary judgment motion that it will be for the jury to determine whether plaintiff's claims are barred by the statute of limitations. Nothing alleged by defendants changes the court's position that it is not clear as a matter of law that plaintiff knew or should have known the facts allegedly actionable on or before March 11, 1979 (the last day of the two-year limitations period). "The atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy." *Sley v. Jamaica Water & Utilities, Inc.,* 77 F.R.D. 391, 395 (E.D.Pa.1977). Defendants' claim affords no basis for denial of this class action motion. *See, Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440, 451 (E.D.Pa.1975).

*Defendants' Claim That Plaintiff's Credibility Problems Make Him An Inadequate Representative*

Rule 23(a)(4) provides that a class action may be maintained only if "the representa-

---

**3.** Even if the court were permitted to consider the merits of the action at this juncture, it is possible that defendants' claim of lack of reliance would still be insufficient to preclude certification. Where a securities action involves failure to disclose, "positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472–73, 31 L.Ed.2d 741 (1972). The Third Circuit has interpreted this Supreme Court pronouncement to mean that reliance will be presumed, if material facts have been omitted, " ' "where it is logical" to do so.' " *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 188 (3d Cir.1981) (citation omitted). The allegations herein are essentially that defendants stood mute in the face of a duty to disclose, with the knowledge that their action

would affect the investment decisions of Trust shareholders, *i.e.,* that defendants committed a "fraud on the market." Without deciding the issue, but considering the likelihood that investors would rely on defendants' disclosures in making their investment decisions, it is probable that a presumption of reliance would be proper in this fraud on the market case. *Cf., Sharp, supra* at 189 ("The opinion letter issued by Coopers & Lybrand was intended to influence the investment decisions of persons interested in WMC partnerships. [Defendant] undoubtedly foresaw that it would have that effect.... Considering the likelihood that investors would rely on the opinion letter, we conclude that the ... burden of refuting a presumption of reliance [was] on the [defendant]." (footnote omitted)). In such case, the possible rebuttal of that reliance would be too speculative at this stage to defeat class certification.

tive parties will fairly and adequately protect the interests of the class." Defendants claim that plaintiff lacks credibility and challenge his ability to represent the purported class. They allege that plaintiff gave contradictory testimony regarding his asserted reliance on the Trust reports, suffered lapses of memory, had difficulty with simple questions, and refused to answer relevant questions at his deposition. Defendants suggest that these alleged infirmities are the result of plaintiff's age.

Generally, "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Defendants have the burden of demonstrating that the representation will be inadequate. *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

Defendants' claims fail to convince the court that plaintiff will necessarily be inadequate and defendants do not challenge counsel's ability to conduct this litigation. The challenges they raise in regard to plaintiff's credibility show nothing to indicate that plaintiff has interests antagonistic to the class.[4] The fact that plaintiff may have, in defendants' view, given contradictory testimony or suffered lapses of memory does not mean that plaintiff's interests are antagonistic to the class as a whole. *See, Peil v. Speiser*, 97 F.R.D. 657, 661 (E.D.Pa.1983) ("The fact that certain defenses to [plaintiff's] complaint may be raised by defendants does not make [plaintiff's] interests adverse or antagonistic to other class members."). *See also, Dorfman v. First Boston Corp.*, 62 F.R.D. 466, 473 (E.D.Pa.1973) ("Neither the personality nor the motives of the plaintiffs is determinative of whether they will provide vigorous advocacy for the members of the class."). The court is persuaded that plaintiff is eager to be a diligent class representative and would be unwilling to ignore his responsibility; plaintiff's age does not render him an inadequate representative. It is possible it enables him to devote more time to independent consideration of the action of class counsel. *See, Fischer v. International Telephone & Telegraph Corp.*, 72 F.R.D. 170 (E.D.N.Y.1976) (fact that plaintiff was seventy (70) years old and suffered from one or more physical disabilities did not make him inadequate representative).[5]

Finally, defendants' claim that plaintiff's refusal to answer allegedly relevant questions at his deposition demonstrates his inadequacy is both misplaced and untimely. Defendants could have tested plaintiff's wrongful refusal to answer relevant questions at his deposition by a motion to compel plaintiff to answer. Defendants will not be permitted to argue now that plaintiff's refusal to answer deposition questions evidences a repudiation of the fiduciary obligations of a class representative. So long as plaintiff is willing to make the personal effort necessary to pursue the litigation notwithstanding the relatively limited return to him personally whatever the possible return to the class if the litigation is successful, he is an adequate class

---

**4.** Defendants also challenge plaintiff's ability to represent class members who sold in the 17-month period after his sale because (a) he has no claim arising from events occurring after his sale, (b) his interests are in conflict with those later sellers, and (c) common issues do not predominate. These arguments are more substantial.

**5.** While defendants do not explicitly argue that plaintiff has insufficient understanding of securities law or knowledge of the material facts herein to adequately represent the interests of the class, they do imply such throughout their

several claims regarding adequacy of representation. However, any suggestion that a would-be class representative need be a sophisticated investor versed in securities law has been rejected by the Supreme Court. *See, Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966). *See also, Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480, 485–86 (E.D.Pa.1977) ("[A] detailed knowledge on the part of non-lawyers of what acts might create liability under section 10b–5 cannot be expected and is not required of a class representative.").

representative. Since plaintiff has represented to the court that he is willing to do so, and is guided by experienced counsel, he is an adequate class representative.

*Defendants' Claim That Plaintiff Cannot Adequately Represent Shareholders Who Sold After April 4, 1978*

Defendants correctly contend that plaintiff cannot adequately represent Trust shareholders who sold shares in the 17-month period following his sale of Trust shares on April 4, 1978. Even if defendants profitably traded on insider information after April 4, 1978, plaintiff was not injured by such action because he had already sold his shares. Since plaintiff cannot recover on the basis of events which occurred after April 4, 1978, he has no real interest in proving such events, notwithstanding the assertions to the contrary of plaintiff's counsel.[6] It would be in plaintiff's interest to emphasize omissions and inaccuracies prior to April, 1978 rather than thereafter; he would be without incentive to press vigorously the case of those who sold subsequent to April, 1978. This is especially true where, as here, there was a series of non-disclosures alleged and the market was in flux; a jury would find it difficult to determine over a period of changing market conditions the adequacy and accuracy of real estate appraisals or income projections, and matters of emphasis or direction of proof would take on added importance. It is unsatisfactory to have a class representative in such an obvious position of conflict. Therefore, the court will certify a class terminating with plaintiff's sale of his shares. *Simon v. Westinghouse Electric Corp.,* 73 F.R.D. 480, 485 (E.D.Pa.1977); *Stull v. Baker,* CCH Fed.Sec.L.Rep. ¶ 94,227 at 94,928 (S.D.N.Y.1973).

*Defendants' Claim That The Class, If Any, Must Begin With Those Selling On Or After March 15, 1978*

It is not clear when the class should begin. Defendants argue that the court's

previous denial of defendants' motion for summary judgment limited plaintiff's claims to a single real estate appraisal obtained by the Trust on March 15, 1978, and a rental projection prepared on or after March 31, 1978. Therefore, they assert that any class period must begin on March 15, 1978, the date of the earliest appraisal at issue. But defendants misread the court's decision. In disposing of defendants' motion, the court stated that:

> [A]t least for purposes of this motion, defendants concede that at least one real estate appraisal and one rental projection were obtained by [defendants] prior to plaintiff's sale of his shares.... Therefore, issues regarding the reliability and materiality of this information prevent resolution of the dispute on motion for summary judgment at this time. Of course, plaintiff's sale may nevertheless be relevant to his adequacy as a class representative or to the class which might be certified.

Memorandum and Order dated September 9, 1983 at 5. That discussion concerned defendant's contention that summary judgment was proper because the allegedly material information requiring disclosure was obtained by defendants after plaintiff had sold his shares. The court held summary judgment inappropriate because defendants conceded the existence of at least two factual issues regarding the materiality of and obligation to disclose information allegedly in defendants' possession before plaintiff sold his shares. Neither this holding nor the suggestion that plaintiff's sale of shares might affect the class certified lead to the conclusion that plaintiff's claims are necessarily limited to the real estate appraisal and rental projection concededly at issue.

Plaintiff seeks a class beginning on November 29, 1977, the date of the Trust's Fiscal 1978 Second Quarter Report and the

---

**6.** In a very real sense, plaintiff would seem to have no standing to argue inadequate disclosure following the sale of his Trust stock.

date defendants started to purchase Trust shares on the open market. In order to represent a class beginning then, plaintiff must have some basis to allege that there was undisclosed material information at that time. Plaintiff claims that defendants were aware of higher rents to be received from leasing the Trust's New York office buildings at least as of November 29, 1977, but failed to reveal such information in the Fiscal 1978 Second Quarter Report dated November 29, 1977 or the Fiscal Third Quarter Report dated January 31, 1978. Plaintiff also asserts that defendants failed to reveal that as a result of prospective increases in rents, the Trust's office buildings had substantially appreciated in value and were worth far more than book value.[7]

Defendants contend that the Trust made comprehensive disclosures regarding the prospective increases in rent and the office buildings' appreciation in value. But determining the extent and adequacy of disclosure is a factual matter that goes to the merits of the dispute, not the issue of class certification. *See, Eisen, supra.* If defendants adequately disclosed the material factual information, they will prevail on the merits as to all members of the class, but defendants' claim of full disclosure does not preclude certification of a class beginning on November 29, 1977.

■ A certified class must be manageable; *see,* Fed.R.Civ.P. 23(b)(3)(D). A class period of four months regarding certain types of disclosures might present no significant problems. But a jury would have trouble understanding and dealing with unrelated appraisals or rental projections over an extended period of time. Here the issues certified on behalf of the class are limited to plaintiff's allegations that defendants failed to disclose anticipated increases in rental revenues and consequent appreciation in value of the Trust's office buildings in the Fiscal 1978 Second Quarter Report, dated November 29, 1977, and Fiscal 1978 Third Quarter Report, dated January 31, 1978, and failed to disclose a real estate appraisal prepared March 15, 1978 and a rental projection prepared on or after March 31, 1978. These alleged failures to disclose are sufficiently related in nature and close in time to permit a jury to deal with them together with the issues of causation and fraudulent concealment.[8]

However, the class must be limited to shareholders who held shares no later than November 29, 1977 and sold them sometime between November 29, 1977 and April 4, 1978. The issues regarding shareholders who held shares prior to November 29, 1977, and sold thereafter, but prior to April 4, 1978, require the jury to determine whether the allegedly material information was known to defendants, whether defendants failed adequately to disclose the information between November 29, 1977 and April 4, 1978, whether such failure affected the market value of the Trust shares, and whether class members were injured at the time they sold their shares. The jury will determine the issues of disclosure, causation and fraudulent concealment as to the entire class. If the class were also to include shareholders who both purchased and sold shares during the class period, the jury would not only be required to analyze each day from November 29, 1977 to April 4, 1978 to determine the nature and adequacy of disclosure and whether a given class member purchased and sold at a time when the disclosure was adequate, but also whether the shareholder not only sold but purchased at a price depressed because of defendant's alleged failure to disclose; if

---

**7.** Plaintiff asserts that defendants were aware of the increased value of the real estate on November 29, 1977 because defendants were negotiating a substantial loan with a mortgage on the buildings as collateral for some time prior to that date.

**8.** For example, information regarding defendants' plans to obtain a mortgage on the New York office buildings which allegedly revealed the increased value of the office buildings is related to the appraisal of those buildings dated March 15, 1978. Likewise, the rental projection prepared on or after March 31, 1978 is related to the actual and expected rental revenues from the office buildings that plaintiff claims defendants knew but failed to disclose as early as November 29, 1977.

so, subsequent sale at a price equally depressed by such failure to disclose would cause no compensable injury. Besides presenting unrelated and difficult issues for the jury, a class of selling shareholders that included shareholders purchasing after certain of the alleged failures to disclose had already occurred would cause individual rather than common questions to predominate. If the class were to include purchasers during the period from November 29, 1977 to April 4, 1978, the issues would be too confusing for the jury and the class would be unmanageable.

Because of the differing consequences if the jury were to conclude that some but not all of the information was material, that some but not all of the material information was disclosed, or that it was disclosed in whole or in part after November 29, 1977 but prior to April 4, 1978, the court will consider either at or before trial the expediency of having subclasses of sellers in an effort to make the issues even more manageable for the jury. The subclasses would consist of those who sold their shares between November 29, 1977 and January 31, 1978 (Subclass I); January 31, 1978 and March 15, 1978 (Subclass II); March 15, 1978 and March 31, 1978 (Subclass III); and April 1, 1978 and April 4, 1978 (Subclass IV).

Subject to the court's right to alter or amend before the decision on the merits, Fed.R.Civ.P. 23(c), plaintiff has met all the requirements of Rule 23(a) and (b)(3) for a class to be conditionally certified consisting of all Trust shareholders, other than defendants and their affiliates, who acquired Trust shares prior to November 29, 1977 and sold them during the period from November 29, 1977 through April 4, 1978, in order to determine:

1) whether defendants failed to disclose adequately with regard to the Trust office buildings' negotiated increases in rentals and consequent appreciation in value in the November, 1977 Fiscal 1978 Second Quarter Report and/or the January 31, 1978 Fiscal 1978 Third Quarter Report;

2) whether defendants failed to disclose a real estate appraisal prepared March 15, 1978 and a rental projection prepared on or after March 31, 1978;

3) whether said failures to disclose caused the value of the shares to be depressed to the benefit of the defendants and the detriment of the plaintiff class; and

4) whether defendants' failure to disclose was fraudulently concealed until on or after March 11, 1979.

As to these issues for this class, common questions predominate and the class is manageable. An appropriate Order follows.