Irving **ROSENBERG**, M.D., Trustee of Irving Rosenberg, M.D. Profit Sharing Trust, Irving Rosenberg, M.D., Employees Pension Trust and Irving Rosenberg, M.D., Defined Benefit Pension Trust

v.

**DIGILOG INC.**, Ronald G. Moyer, T.M. Emory, Jr., P.P. Taraborelli, L.J. Amkney, John Vensel, H.W. Paige.

Civ. A. No. 84–3331.

United States District Court, E.D. Pennsylvania.

July 31, 1985.

Stuart H. Savett, David H. Marion and Barbara A. Podell, Philadelphia, Pa., for plaintiffs.

Daniel J. McCauley, Leonard Dubin, William E. Taylor, Alexander D. Bono, and Blank, Rome, Comiskey & McCauley, Philadelphia, Pa., for defendants.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

On June 10, 1985, plaintiff filed this action charging defendants with, inter alia, violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78r(a), and Rule 10b–5. Plaintiff brought the action individually and on behalf of the purchasers of the common stock of Digilog, Inc.[1]

Presently before the court is plaintiff's motion for reconsideration of an order dismissing the amended complaint. Briefly stated, the facts in this case are as follows.

Plaintiff and the class he seeks to represent are the purchasers of Digilog, Inc. stock. Digilog, Inc. is a corporation engaged in the development, manufacture and marketing of high technology electronic telecommunications and data processing equipment. Defendant Coopers & Lybrand ("C & L") is a partnership of certified public accountants who at all relevant times acted as Digilog's independent auditor. C & L also prepared Digilog's annual reports and financial statements for 1981, 1982, and 1983, the years at issue in plaintiff's case. The remaining defendants are the officers and directors of Digilog, Inc.

In 1981, Digilog, Inc. formed a second corporation, DBS International, Inc., to market its products both in the United States and abroad. By 1983, Digilog had acquired over 90% ownership of DBS. Neither Digilog nor DBS, however, disclosed this information in their annual reports or financial statements. Plaintiff maintains that because C & L did not consolidate the corporations' reports, Digilog's financial statements did not accurately reflect the effect of DBS' losses on Digilog's financial condition. Plaintiff contends that had C & L properly consolidated financial information from both corporations in the financial statements and annual reports it had prepared for Digilog, Digilog would have shown substantial pre-tax losses in 1981

---

1. The merits of plaintiff's motion for class certification were not reached prior to the dismissal of plaintiff's amended complaint.

rather than pre-tax earnings and that the company would have shown substantially lower pre-tax earnings in 1982 and 1983 than actually reported. Plaintiff further asserts that the alleged misrepresentations and omissions in Digilog's financial reports artificially inflated the market price at which plaintiff and other purported class members purchased Digilog stock. C & L subsequently filed a motion to dismiss on the grounds that the Complaint failed to allege actual reliance on the alleged misstatements.

On February 8, 1985, I granted defendants' motion and entered an order dismissing plaintiff's complaint but allowing plaintiff ten (10) days to amend his complaint to allege actual reliance upon the alleged misstatements. That order was filed by the Clerk on February 11, 1985. On February 21, plaintiff filed this motion for reconsideration. C & L opposes that motion on several grounds.

First, C & L contends that plaintiff's motion for reconsideration violates Rule 20(g) of the Local Rules of Civil Procedure because it was filed late.[2] This argument is without merit.

Rule 20(g) of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania provides:

> Motions for reconsideration or reargument shall be served within (10) days after the entry of the judgment, order, or decree concerned.

The order dismissing plaintiff's complaint was, as previously noted, filed on February 11, 1985. Since plaintiff's motion for reconsideration was filed on February 21, it clearly falls within the ten (10) day limitation period set forth in Rule 20.

■ Defendant's second argument asserts, basically, that the law in this Circuit clearly established a requirement of actual reliance on defendant's alleged misstatements. C & L contends that since plaintiff failed to allege actual reliance on the al-

leged misstatements in Digilog's financial statements, its complaint was properly dismissed and plaintiff's motion for reconsideration should be denied.

Traditionally, the measure of causation in private actions for misrepresentation has been proof of plaintiff's reliance on defendant's alleged misstatements or omissions. *List v. Fashion Park, Inc.*, 340 F.2d 457, 462 (2d Cir.1965). Similarly, the function of requiring a plaintiff to show reliance in actions under the securities laws is to permit only those who are injured by defendant's wrongful conduct to sue. In certain situations, however, the Supreme Court has recognized the need to offer some relief from the heavy burden often imposed by the reliance requirement.

In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), for example, the Supreme Court held that in cases involving omissions of material information rather than misrepresentations of fact, the trier of fact may presume reliance where plaintiff could justifiably expect disclosure of all material information by defendant. All that is necessary is that the facts withheld by defendant be material in the sense that a reasonable investor might have considered them important in making his decision. *Affiliated Ute*, 406 U.S. at 153, 92 S.Ct. at 1472.

Plaintiff contends that following the Supreme Court's holding in *Affiliated Ute*, "courts in this Circuit and elsewhere have uniformly held that a plaintiff need not allege actual reliance when defendant's alleged misrepresentations or omissions affect the market price of the stock in question." Memorandum in Support of Plaintiff's Motion for Reconsideration, at 1–2. This is entirely true.

The Court's decision in *Affiliated Ute* does not eliminate reliance as an element of a cause of action under the federal securities laws. Rather, *Affiliated Ute* establishes, under limited circumstances, a rebut-

---

**2.** Defendants contend that the motion violates Local Rule 20(c). I believe, however, that this is a typographical error since it is subsection (g) of that rule which addresses the time in which to file a motion for reconsideration.

table presumption of reliance in favor of plaintiff. Other federal circuits have extended the Supreme Court's rationale in *Affiliated Ute* and have allowed reliance on the integrity of the market to substitute for reliance on defendant's conduct. *Panzirer v. Wolf*, 663 F.2d 365 (2d Cir.1981); *Rifkin v. Crow*, 574 F.2d 256 (5th Cir.1978); *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975).

While the Third Circuit has not expressly adopted the "fraud on the market" theory of reliance, the concept has been examined by other judges in this district. *Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529 (E.D.Pa.1984); *Peil v. Speiser*, 97 F.R.D. 657 (E.D.Pa.1983); *Beissinger v. Rockwood Computer Corp.*, 529 F.Supp. 770 (E.D.Pa. 1981); *Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168 (E.D.Pa.1979).[3] Upon further reflection, I am persuaded that the fraud on the market theory is well suited for application to the facts in this case.

The essential purpose behind proving reliance in actions brought pursuant to securities legislation is to establish a causal connection between plaintiff's injury and defendants' conduct. *Sharp v. Coopers & Lybrand*, 649 F.2d 175 (3d Cir.1981). Proving reliance is necessarily difficult, if not impossible, however, where the alleged misstatements or omissions have affected the stock market and damaged plaintiff only through their effect on the market. The fraud on the market theory addresses this problem.

The central assumption of the theory is that the market price of a stock reflects all representations made by defendant with respect to that stock. *In Re Data Access Systems Securities Litigation*, 103 F.R.D. 130 (D.N.J.1984). Other courts, however, have applied the fraud on the market theory as it is articulated in *Sargent v. Genesco, Inc.*, 75 F.R.D. 79 (M.D.Fla.1977), and require proof that defendant's misrepresentations and omissions were a part of a common scheme to manipulate the value of stock. *Peil v. Speiser*, 97 F.R.D. at 663.

In my view, however, the fraud on the market theory as originally formulated by the Ninth Circuit in *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975), is better suited in promoting the objectives of the securities laws. The court in *Blackie* recognized the relationship between reliance and causation but eliminated the requirement of proving reliance where the requirement imposed an unreasonable evidentiary burden. *Blackie*, 524 F.2d at 807. *Blackie* did not require proof of a "common scheme." Imposing such a requirement creates another burden which could effectively preclude the maintenance of otherwise legitimate suits under the securities laws. Securities legislation, enacted for the purpose of avoiding fraud, is intended by Congress to be construed not technically and restrictively but flexibly to effectuate its remedial purposes. *Affiliated Ute*, 406 U.S. at 151, 92 S.Ct. at 1471.

The central issue in determining whether to substitute reliance on the integrity of the market for actual reliance on defendants' alleged misstatements or omissions is whether reliance on the market adequately demonstrates a sufficient nexus between defendants' conduct and plaintiff's injury. I am convinced that it does. The rebuttable presumption created by *Blackie*'s fraud on the market theory is fair and logical: The inflated market price of the stock sold to plaintiff would not have been so but for defendants' conduct. Plaintiff may, therefore, substitute his reliance on the integrity of the market for actual reliance on defendants' conduct in making out a prima facie case under § 10 of the SEA and Rule 10b–5.

I am not convinced, however, that plaintiff may offer any substitute for actual reliance with regard to his pendent state law claims for fraud and common law misrepresentation. Both causes of action require proof of reliance on defendants' representations and my research reveals no state court decisions which have adopted a "fraud on the market" type theory of re-

---

**3.** For a thorough review of the fraud on the market theory, See Note, "The Fraud on the

Market Theory", 95 Harv. L. Rev. 1142 (March, 1982).

**44**

liance. Accordingly, there is no reason to alter my prior ruling with respect to plaintiff's state law claims.

Therefore, plaintiff's motion for reconsideration of this court's order of February 11, 1985, will be granted as it applies to plaintiff's federal claims.

### ORDER

AND NOW, this 31st day of July, 1985 upon consideration of the plaintiff's motion for reconsideration, it is ORDERED that the Order of February 11, 1985 dismissing plaintiff's complaint is hereby VACATED as to plaintiff's federal law claim, but in all other respect the motion is DENIED.